FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 0 8 2013

JAMES N. HATTEN, Clerk

By _____ Deputy Clerk

ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EQUAL EMPLOYMENT OPPORTUNITY :
COMMISSION, :
                        :
           Applicant, :
                        :
HOMENURSE, INC., :
                        :
           Respondent. :

MISC. ACTION NO.

1 : 13 - M I - 0131

TWT

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE WHY THE EEOC'S ADMINISTRATIVE SUBPOENA SHOULD BE ENFORCED

This case is before the Court on the application of the Equal Employment Opportunity Commission ("EEOC") for an Order to Show Cause why its subpoena should not be enforced. The EEOC is currently investigating charges of discrimination under the Americans with Disabilities Act of 1990, as amended (the "ADA"), the Genetic Information Nondiscriminatory Act of 2008 ("GINA"), the Age Discrimination and Employment Act (the "ADEA"), and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Christie Carroll (the "Charging Party") alleges that HomeNurse, Inc. (the "Respondent") subjected individuals with disabilities, with pre-existing medical conditions, and those over the age of 40, as a class, to discrimination in violation of the ADA, GINA, and the ADEA. Finally, Charging Party alleges that the Respondent has a policy of not hiring

individuals with conviction records, and that this policy adversely affects African Americans, in violation of Title VII. In the course of its investigation, the EEOC issued a subpoena seeking application information and other materials contained in Respondent's application packet relating to the issues alleged in the charge.

On or around January 26, 2012, Respondent submitted a Petition to Revoke or Modify Subpoena. On or about February 20, 2013, the EEOC issued a Determination denying Respondent's Petition. Specifically, the EEOC stated that Respondent "should provide access to the information sought by Subpoena AT-12-026 (the "Fourth Subpoena" or the "Subpoena") within ten days of its receipt of this determination." Respondent, on or around March 8, 2013, refused to produce the requested documents related to employees or applicant packets, and that refusal has delayed and hampered the investigation of this charge. Therefore, the EEOC applies to this Court to issue an Order to Show Cause why the Subpoena should not be enforced.

## I.    FACTUAL BACKGROUND

On May 20, 2010, Charging Party filed a charge of discrimination (the "Charge") with the EEOC alleging that she complained to the District Manager that Respondent's pre-hire screening methods were discriminatory. (*Declaration of District Director, Ex. 1*). Charging Party alleged that, as a result, Respondent subjected her to unlawful retaliation in violation of the ADA and GINA. *Id.*

2

Charging Party also alleged various types of class discrimination. In particular, she alleged that Respondent discriminated against individuals with disabilities, pre-existing medical conditions, and those over the age of 40, as a class, in violation of the ADA, GINA, and ADEA. *Id.* Finally, the Charging Party alleged that the Respondent has a policy of not hiring individuals with conviction records and that this policy adversely affects African Americans in violation of Title VII. *Id.*

Charging Party began her employment with Respondent on or about March 3, 2009, as a Staffing Coordinator. *Id.* As Staffing Coordinator, Charging Party's role exposed her to the hiring process and mechanisms utilized by Respondent to screen candidates for employment. On or about February 20, 2010, Charging Party complained to each of her district managers that certain pre-hire screening methods used by Respondent were discriminatory. *Id.* Specifically, Charging Party expressed concern to her supervisors about the exclusion of certain applicants based on responses provided by those applicants on Respondent's Employee Medical History Questionnaire. *Id.* Through use of its Employee Medical History Questionnaire, Respondent required applicants to disclose medical conditions, height, and weight in order to be considered for employment opportunities. *Id.* On or about April 27, 2010, Respondent terminated Charging Party's employment. *Id.*

On May 28, 2010, the Charge was hand-served on Respondent along with Subpoena AT-10-79 (the "First Subpoena"), which requested employee

information and access to certain personnel documents maintained by Respondent. *(Declaration of District Director, Ex. 2)*. Specifically, the EEOC requested: (1) a computer printout of all applicants during the relevant time period indicating whether or not the applicant was hired, as well as the reasons why applicants were not hired; (2) access to all employee files; (3) a complete copy of the employment application including the medical questionnaire; and (4) any policies relating to arrest and conviction records. *Id.*

In response, Respondent issued a position statement alleging that Charging Party was terminated for posting confidential patient information on her Facebook page in violation of several company rules, including Respondent's Cell Phone Usage Policy, HIPAA Confidentiality and Non-Disclosure Agreement, Workplace Rules of Conduct, and a disciplinary warning issued to Charging Party in November 2009. *(Declaration of District Director, Ex. 3).* In an amended position statement, Respondent requested that the EEOC dismiss the Charge because the Charging Party did not mention her Charge before a state administrative law judge in an unemployment benefits proceeding. *(Declaration of District Director, Ex. 4).* Additionally, the Respondent supported its request for dismissal of the Charge on the basis that Charging Party is not a member of the protected classes covered by the ADEA and Title VII. *Id.*

### A. The EEOC Served a Request for Information and Engaged Respondent in Discussions Regarding the Information

On September 7, 2010, the EEOC issued a written Request for Information ("RFI") to Respondent. *(Declaration of District Director, Ex. 5)*. The EEOC requested employment information for all individuals employed by Respondent any time during the period April 1, 2008, through September 7, 2010. [1] *Id.* Additionally, the EEOC requested employment information and application packets submitted by all individuals who sought employment with Respondent during the same time period.[2] *Id.* Although the initial RFI directed Respondent to submit the requested documents by September 16, 2010, the EEOC granted Respondent's request for an extension through and including October 11, 2010. *(Declaration of District Director, ¶ e)*. Nevertheless, Respondent failed to comply with the RFI by the stated deadline. *Id.* Instead, in a letter dated October 4, 2010, Respondent proposed a meeting during which it would provide samples of the documents sought by the RFI. *(Declaration of District Director, Ex. 7)*. The EEOC subsequently agreed to accept three application packets as a sample for individuals who sought employment with Respondent during the relevant time period. Respondent mailed the agreed-upon sample packets on November 5, 2010. *(Declaration of District Director, ¶ g)*. The EEOC's RFI concerning individuals

---

[1] For each individual, the EEOC requested the following data: name, date of birth, title, date of hire, date of and reason for separation, if applicable, and last known home telephone number and address.

[2] For each individual, the EEOC requested the following data: name, date of birth, reason not hired, office where they applied, time of and person who conducted the interview, if applicable, and name of person who made the determination.

employed by Respondent during the relevant time period was not limited and remained outstanding. *(Declaration of District Director, ¶ h)*. However, Respondent declined to furnish any additional information sought by the RFI and argued that a discussion of Respondent's modification of its hiring process would be sufficient to conciliate the Charge. *Id.*

On or about March 15, 2011, Respondent and the EEOC convened via a conference call to discuss the outstanding RFI and to clarify any ambiguities or misunderstandings that were allegedly hindering Respondent's ability to submit the requested documents. *(Declaration of District Director, ¶ i)*. Respondent understood the EEOC was requesting: "(1) all application files, whether the applicant was hired or not hired; (2) a spreadsheet providing certain information for all employees who worked for HomeNurse within the Relevant Timeframe; and (3) supporting documentation for any individuals terminated for misconduct within the Relevant Timeframe" and indicated that the requested information would be available for review by April 29, 2011. *(Declaration of District Director, Ex. 8)*. However, on April 29, 2011, Respondent indicated that although all of the requested information had been compiled, it would not be ready for review for three more weeks. *(Declaration of District Director, Ex. 9)*. The EEOC once again granted Respondent's request for an extension to respond to the RFI, but due to Respondent's repeated failure to provide the requested information despite

previous accommodations, the EEOC indicated that a subpoena would be issued to ensure compliance with its request. *(Declaration of District Director, Ex. 10)*.

### B. Administrative Subpoena History

In light of Respondent's outright refusal to produce certain documents, the EEOC served Respondent with Subpoena AT-11-064 on May 5, 2011 (the "Second Subpoena"). The Second Subpoena ordered the Respondent to submit by May 19, 2011, three categories of information: (1) a list of all individuals employed at any time during the time period of January 1, 2009 through the present; (2) copies of all separation notices for anyone separated during the above referenced time period; and (3) all applications submitted in the last two years for any position. *Id.*

Respondent filed a Petition to Modify or Revoke the Second Subpoena on May 17, 2011. *(Declaration of District Director, Ex. 11)*. Respondent argued that prior to the issuance of the subpoena the parties had reached a mutual agreement for it to produce certain documents and information by May 20, 2011, and that given the agreement, the subpoena was abusive and unnecessary. *Id.* Moreover, Respondent argued that the subpoena should be modified or revoked because the EEOC failed to conform to the parties' agreement. *Id.*

On May 20, 2011, Respondent provided a "response to the EEOC's official request for information." *(Declaration of District Director, Ex. 12)*. Respondent

7

submitted one CD, which included employment information for current and former employees between January 1, 2009 and May 20, 2011. Further, Respondent submitted a second CD containing (1) applications for applicants who applied, but were not hired, between January 1, 2009, and May 20, 2011; (2) applications for current employees; and (3) applications for employees who were separated from employment between January 1, 2009, and May 20, 2011, and supporting documentation for those employees terminated for misconduct. *Id.*

In response to the submission, EEOC Enforcement Supervisor Natasha Barton contacted Respondent on May 25, 2011, to discuss its failure to produce all documents that encompass an individual's application packet. *(Declaration of District Director, Ex. 13).* In turn, the Respondent argued that the EEOC requested only "applications," and that the plain meaning of "applications" does not include all documents which may comprise an "application packet." However, Respondent acknowledged the EEOC's request for application packets, but rather than complying, Respondent requested the EEOC provide precise description of the documents and information it sought. *(Declaration of District Director, ¶ m).*

Subsequently, the EEOC served Respondent with Subpoena AT-11-091 (the "Third Subpoena") on June 13, 2011. *(Declaration of District Director, Ex. 14).* Specifically, the Third Subpoena requested that Respondent produce all application packets for each individual applicant for the time period January 1, 2009, through

the present, excluding those already submitted on May 20, 2011. The Third Subpoena particularly identified the following as documents that should be included within each "application packet": (1) Aide Availability and Information Sheets; (2) Work Reference Forms; (3) Consumer Report Authorization and Disclosure Forms; (4) Motor Vehicle Report Authorization Forms; (5) Personal Reference Forms; (6) Reference Letter/Performance Evaluation Forms; and (7) Medical History Questionnaires. *Id.*

On July 21, 2011, pursuant to the Third Subpoena, Respondent produced the following documents for *individuals who submitted applications to Respondent between January 1, 2009 and July 20, 2011, but were not hired*: (1) Aide Availability and Information Sheets; (2) HomeNurse Work Reference Forms; (3) Consumer Report Authorization and Disclosure Forms; and (4) Medical History Questionnaires. *(Declaration of District Director, ¶ o).* Moreover, Respondent refused to produce any of the requested documents, with the exception of Medical History Questionnaires, for *individuals hired and/or employed by Respondent between January 1, 2009 and July 20, 2011*, and/or for *individuals terminated by Respondent between January 1, 2009 and July 20, 2011.*

Respondent sought to revoke or modify the Third Subpoena on the grounds that the Third Subpoena: (1) sought information and documents not relevant to the Charge, and (2) imposed an undue burden on Respondent. *(Declaration of District*

*Director, Ex. 15).* Specifically, Respondent objected to the production of MVR Authorization Forms, Personal Reference Forms, and Reference Letters/Performance Evaluation Forms for any category of employees on the basis that such documents are not relevant to the Charge and that the production of such documents allegedly places an undue burden on Respondent. Further, Respondent objected to the production of Aide Availability and Information Sheets, HomeNurse Work Reference Forms, and Consumer Report Authorization and Disclosure Forms for individuals who applied between January 1, 2009 and July 20, 2011. *Id.* Respondent argued that the requested documents are not relevant to the Charge and that the production of such documents allegedly places an undue burden on Respondent, noting that the Third Subpoena calls for the production of a minimum of 10,000 pages of documents. *Id.*

## C.     The Subpoena at Issue

Due to the Respondent's history of failing to comply with the EEOC's requests, the EEOC served the Respondent with Subpoena AT-12-026, (the "Subpoena"), on or around January 23, 2012. *(Declaration of District Director, Ex. 16).* The Subpoena compels Respondent to provide access to the EEOC to review any and all unredacted application packets between January 1, 2009, and the present. *Id.* The Subpoena reiterates the EEOC's request that each application packet should include the documents specifically set out in the Third Subpoena. *Id.*

On January 26, 2012, Respondent filed a Petition to Modify or Revoke the Fourth Subpoena. *(Declaration of District Director, Ex. 17)*. In it, Respondent renewed the objections raised in its Petition to Modify or Revoke the Third Subpoena. *Id.* Further, Respondent objected on the basis that the Subpoena allegedly seeks documents that have already been produced and does not allow a sufficient timeframe for production. *Id.* The Commission denied the Petition to Modify or Revoke the Fourth Subpoena, and requested that Respondent provide access to the information sought within ten days of February 20, 2013. *(Declaration of District Director, Ex. 18)*.

Respondent failed to comply with the Commission's directive. Instead, on March 8, 2013 the Respondent sent a letter to the Atlanta District Director, Bernice Williams-Kimbrough, stating that it would not comply with the Subpoena. Respondent argued that the Commission failed to analyze the relevancy standard correctly and alleged that the Subpoena was unduly burdensome. *(Declaration of District Director, Ex. 19)*. Specifically, Respondent alleged that it had produced nearly 37,000 pages of documents and expended nearly $100,000 over the course of four subpoenas. *Id.*

Importantly, Respondent admitted that its hiring policy at the time of the Charge used impermissible medical questionnaires. *Id.* Further, Respondent surmised that the cost of subpoena compliance to date is penalty enough for the use

of the medical questionnaire. *Id.* Respondent argued that it had stopped using the medical questionnaires and that the EEOC should conciliate or find a "no cause" for the Charge. *Id.* Finally, Respondent reiterated its stance of non-compliance with the Subpoena. *Id.* In turn, the EEOC has petitioned this Court for an Order to Show Cause in regards to the Subpoena at issue.

## II.   ARGUMENT

### A.   Congress Authorizes the EEOC to Investigate and Enforce Charges of Discrimination

Congress has authorized, and indeed mandated, that the EEOC investigate charges of discrimination alleging that the ADA, GINA, ADEA and Title VII have been violated. 42 U.S.C. § 2000e-5(f)(1) and (3). Furthermore, Congress has conferred on the EEOC broad powers of access to records of those entities against whom charges have been filed, 42 U.S.C. § 20003-8(a), including the authority to subpoena evidence in an investigation 42 U.S.C.A. § 2000ff-6(a)(1) (GINA incorporates Title VII investigative and subpoena powers); 29 U.S.C.A. § 626 a(1) *see also E.E.O.C. v. Elrod*, 674 F.2d 601 (7th Cir. 1982) (ADEA incorporates Title VII investigative and subpoena powers); ADA §107 incorporates Title VII investigative and subpoena powers). Pursuant to the EEOC's Procedural Regulations, the EEOC may institute proceedings to enforce a subpoena when a Respondent does not comply with the Commission's Determination upholding the subpoena. 20 C.F.R. §1601.16(d); *see also EEOC v. Gladieux Refinery, Inc.*, 631

F. Supp. 927, 930 (N.D. Ind. 1986) ("If a party refuses to obey a subpoena, EEOC may apply for enforcement of the subpoena in the district court...").

To petition a court to enforce an administrative subpoena, the EEOC need only show: 1) that the subpoena is within the authority of the agency, 2) the subpoena is not too indefinite, and 3) the information sought is reasonably relevant to the matters under investigation. *Univ. of PA. v. EEOC*, 493 U.S. 182, 191 (1990); *EEOC v. Shell Oil*, 466 U.S. 54, 72, n. 26 (1984) (internal citations omitted).[3]

Once this showing has been made by the EEOC, the court must enforce the subpoena unless Respondent can prove that the subpoena is unduly burdensome. *See EEOC v. Children's Hospital Medical Center*, 719 F.2d at 1426, 1428 (9th Cir. 1983); *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir. 1981); *EEOC v. South Carolina Nat'l Bank*, 562 F.2d 329, 332 (4th Cir. 1977); *see also Oklahoma Press Publishing v. Walling*, 327 U.S. 186, 217 (1946).

## B.    The EEOC's Subpoena is Within the Agency's Authority

In this case, the Subpoena falls squarely within the EEOC's authority because it pertains to an investigation into allegations that the Respondent subjected multiple protected classes of individuals to discrimination in violation of

---

[3] "The Eleventh Circuit has also described the permissible areas of inquiry as: (1) whether the subpoena is within the authority of the agency, (2) whether the subpoena is not too indefinite, and (3) whether the information sought is reasonably relevant to the matters under investigation." *EEOC v. Wieland Homes*, No. 1:06-CV-1804-WSD, 2006 U.S. Dist. Lexis 68699, at * 15 (N.D. Ga. September 25, 2006) (*citing EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996)); *Federal Election Com'n v. Florida for Kennedy Committee*, 681 F.2d 1281, 1284 (11th Cir. 1982).

the ADA, GINA, ADEA and Title VII. Here, the EEOC is seeking specific applicant and employment records of Respondent, against whom the Charge has been filed. These applicant packets and employment records and other documents sought relate to the matters under investigation. Further, Respondent admitted in its most recent correspondence with the EEOC that it engaged in the impermissible collection of medical data during Charging Party's employment. Therefore, such an investigation is within the EEOC's statutory authority.

The Respondent argues that the Charging Party lacks standing and claims that an investigation into the allegations falls outside of the EEOC's authority. However, the EEOC can conduct an investigation "whenever a charge is filed by or on behalf of a person claiming to be aggrieved" alleging that an employer has engaged in an unlawful employment practice. *See* 42 U.S.C. § 2000e-5; *see also* 42 U.S.C. § 12117(a). Accordingly, the EEOC has the authority under the statute to conduct an investigation into the matters alleged in a charge of discrimination that is filed by or on behalf of an aggrieved person. *Id.* Further, the standing of the charging party does not bar the EEOC from fulfilling its statutory obligation of investigating charges of discrimination. *Id.* For example, in *EEOC v. Occidental Life Ins. Co. of California*, 429 U.S. 1022, 97 S. Ct. 638 (1977), the Supreme Court held that the fact that a charging party may not have standing to charge an employer with discrimination based on matters discovered during the investigation

14

of the charge does not bar the EEOC from investigating the information acquired during a reasonable investigation of the charge. More importantly, in *EEOC v. General Elec. Co.*, 532 F.2d 359, 373 (4th Cir. 1976), the Court held that the standing of the EEOC to carry its investigatory and regulatory objectives cannot be controlled or determined by the standing of the charging party. To hold otherwise, the Court stated, would be to treat the only purpose of discrimination statutes "to be the correction of individual wrongs, rather than of public or 'societal wrongs as well as to deny to the EEOC the right to be any more than a mere proxy for the charging party rather than what Congress intended". *Id.* at 373. Therefore, the Subpoena is proper so long as there is a plausible argument that the ADA, ADEA, GINA and Title VII apply.

**C.     The Subpoena is Not Too Indefinite**

The Subpoena is definite and specific as to the time period and documents it demands from Respondent. Generally, requests for specific documents, such as employment policies, contracts and information on current and former employees, are not considered indefinite for administrative subpoena purposes. *See EEOC v. Wieland Homes*, No. 1:06-CV-1804-WSD, 2006 U.S. Dist Lexis 68699, at *24-27 (N.D. Ga. Sep. 25, 2006). Here, the EEOC seeks specific information, requesting from the Respondent *all* application packets from the period of April 1, 2008 through the present, including: (1) Aide Availability and Information Sheets, (2)

Work Reference Forms, (3) Consumer Report Authorization and Disclosure Forms, (4) Motor Vehicle Report Authorization Forms, (5) Personal Reference Forms, (6) Reference Letter/Performance Evaluation Forms and (7) Medical History Questionnaires (collectively "The Requests"). The information sought is definite and is within the scope of the alleged Title VII, ADA, ADEA, and GINA violations. In fact, the Respondent acknowledges the impermissible use of the Medical History Questionnaires at the time of Charging Party's Charge, but seeks to dodge the investigation by claiming that this is not a part of its *current* application packet. Notably, the Respondent does not contest the EEOC's authority to investigate exactly these kinds of possible violations. Therefore, the subpoena is valid and within the EEOC's statutory authority, as granted by Congress.

**D.    The Information Sought by the EEOC Is Relevant to the Charge**

Respondent also argues that the information sought is not relevant because it claims that The Requests will not shed any light on the Charging Party's Charge. Respondent attempts to limit the inquiry to the individual claims in the Charge and ignores the class issues the Charge raises. However, the standard is that the information sought by the EEOC must not be "plainly incompetent or irrelevant to any lawful purpose." *EEOC v. Kloster Cruise, Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991). Indeed, the lawful purpose of an EEOC subpoena is to investigate violations of Title VII, ADA, ADEA and GINA. *Id.* at 923; *EEOC v. Tire Kingdom, Inc.*, 80

F.3d 449, 450 (11ᵗʰ Cir. 1996); *see also United States v. Morton Salt Co.*, 338 U.S. 632 (1950) (noting that unlike the judiciary, an agency is not bound by the case or controversy requirement, and can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not). Charging Party alleged that Respondent discriminated against individuals with disabilities, pre-existing medical conditions, and those over the age of 40, as a class, in violation of the ADA, GINA, and ADEA. Furthermore, Charging Party alleged that the Respondent has a policy of not hiring individuals with conviction records and that this policy adversely affects African Americans in violation of Title VII. Any applicant or employee who was not hired, who was discouraged from applying, or whose employment was terminated in violation of Title VII, ADA, ADEA and GINA is a potential class member and part of the EEOC's investigation of the Charge. Then, the inquiry would shift to whether they were persons who could raise a claim under Title VII, ADA, ADEA and GINA. The EEOC is *at least* entitled to the information it needs to investigate potential class members and their claims to determine whether such persons' rights were violated, which is the sole purpose of an EEOC investigation.

Furthermore, the Subpoena seeks information relevant to the investigation of the Charging Party's Charge. *See Shell Oil*, 466 U.S. 54. Indeed, it is well established that "[t]he relevance requirement is not particularly onerous. Courts

have given broad construction to the term 'relevant' and have traditionally allowed the EEOC access to any material that might cast light on the allegations against the employer." *EEOC v. Shell Oil Co*, at 68-69; *see also EEOC v. Dillon Cos., Inc.* 310 F.3d 1271, 1274 (10th Cir. 2002) ("The Supreme Court has explained that the 'relevancy' limitation on the EEOC's investigative authority is 'not especially constraining.'" (*quoting Shell Oil*, 466 U.S. at 68)); *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994) (noting that "Congress intended [the EEOC] to have broad access to information relevant to inquiries it is mandated to conduct"); *EEOC v. Franklin & Marshall Coll.*, 775 F.2d 110, 116 (3d Cir. 1985) ("The concept of relevancy is construed broadly when a charge is in the investigatory stage.").

In this instance, the information pursued by the EEOC is relevant to both the individual claims of retaliation and the class allegations contained in the Charge. The Charging Party alleges that the Respondent unlawfully retaliated against her in violation of GINA and the ADA. Further, the Charging Party alleges that the Respondent subjected applicants to class discrimination in violation of Title VII, ADA, ADEA and GINA. Thus, the information sought regarding who was hired, how they were selected and the criterion used in those selections will shed light on the Charging Party's allegations. Therefore, the information sought is relevant to the EEOC's investigation.

**E. The Subpoena is Neither Overly Broad Nor Unduly Burdensome**

Respondent argues that compliance with the Subpoena would be extremely time consuming and financially costly. In fact, Respondent argues that it did require impermissible information at one time in its application packets, but that this practice has halted. Therefore, the Respondent contends that the EEOC should not be allowed peer into the practices at the time. Instead, the Respondent surmises that the alleged $100,000 that it has spent on the investigation is a sufficient penalty for its past violations.

The Court will not excuse compliance with a subpoena for relevant information on the grounds of burdensomeness unless the Respondent can establish that "compliance with the subpoena threatens to unduly disrupt or seriously hinder normal operations of a business." *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 479 (4th Cir. 1986); *see also EEOC v. Citicorp Diners Club*, 985 F.2d 1036, 1040 (10th Cir. 1993); *EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 788 (7th Cir. 1983); *FTC v. Rockefeller*, 591 F.2d 182, 190 (2d Cir. 1979); *FTC v. Texaco*, 555 F.2d 862, 882 (D.C. Cir. 1977) (*en banc*); *EEOC v. Rite Aid Corp.*, 2000 U.S. Dist. LEXIS 16332, at *5, 7-8 (D. Md. Oct. 3, 2000); *EEOC v. Sunoco, Inc.*, 2009 U.S. Dist. LEXIS 6070, at *17-18 (E.D. Pa. Jan. 26, 2009). Therefore, the party who objects to a subpoena must show that the cost of compliance with the subpoena is unduly burdensome in light of the company's normal operating

19

expenses. In fact, the presumption is that compliance should be enforced to further the agency's legitimate inquiry into matters of public interest. *EEOC v. United Airlines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002) (*quoting FTC v. Shaffner*, 626 F.2d 32, 38 (7th Cir. 1980)). In this case, Respondent has not, and cannot, show that complying with the EEOC's subpoena would unduly disrupt or seriously hinder the normal operations of its business.

For example, in *Maryland Cup*, 785 F.2d at 479, the court found that it was not unduly burdensome to require the company to spend $75,000 to inspect photo identifications to identify the race of employees and to interview employees in order to provide the EEOC with the last-known addresses and telephone numbers of former employees. In addition, in *Citicorp Diners Club*, 985 F.2d at 1040, the court found that it was not unduly burdensome to require a company to comply with a subpoena that had 14 numbered paragraphs, which required either the production of a large number of documents or the compiling of information by reviewing and summarizing personnel files and interviewing employees. Accordingly, in *EEOC v. Quad/Graphics*, 63 F.3d 642, 648-49 (7th Cir. 1995), the employer presented evidence that it would take over 200,000 hours to compile information in response to the EEOC's subpoena, but the court concluded that the estimate was inflated, especially in light of the EEOC's concession to accept a random sampling for ninety percent of the work.

Likewise, in *EEOC v. Sunoco Inc.*, 2009 U.S. Dist LEXIS 6070, at \*17-18, the court held that a subpoena requiring Sunoco to identify, obtain, and synthesize thousands of documents from five different facilities was not unduly burdensome even though compliance required an "inordinate amount of time and money" and resulted in "significant drain on Sunoco's resources" because the company did not demonstrate how compliance would pose a burden so great that it would "threaten," "unduly disrupt," or "seriously hinder" its normal business operations. Finally, in *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110 (4th Cir. 1997), the Fourth Circuit upheld an administrative subpoena issued to investigate an ADEA claim, requesting the company to identify computer files that the company had maintained on certain employees during a four-year period. In each of the above cases, the court enforced the administrative subpoena.

In this case, the arguments brought by Respondent fall short of satisfying the standard for showing an unduly burden on its business. At best, the Respondent has shown that compliance with the Subpoena will involve some inconvenience and cost. Indeed, the Respondent has brought much of the cost upon itself by attempting to evade the requests and three prior subpoenas issued by the EEOC. Specifically, the EEOC engaged the Respondent in a phone conference to define the scope of the investigation, with both parties understanding the Charge implicated the full application packet process used by the Respondent. Instead of

producing *all* the application packets for the relevant time period, the Respondent attempted first to supply only single applications. Then, the Respondent minimally complied with the requests in the Third Subpoena. Further, the Respondent's Petition to Revoke or Modify the Subpoena was denied and the Respondent was compelled to comply with the terms of the Subpoena at issue.

Instead, the Respondent has admitted that it used impermissible application data or criterion, but contends that it has rectified its application process and its dealings with the EEOC thus far should be sufficient punishment. Thus, the Respondents much alleged cost or inconvenience has been primarily self-inflicted. In sum, Respondent's argument that the subpoena imposes an undue burden on its business falls short of the standard set forth in the aforementioned cases. At best, the Subpoena represents a mere inconvenience for the Respondent. Therefore, the Subpoena is not unduly burdensome on the Respondent.

## CONCLUSION

The EEOC issued the Subpoena in question in furtherance of an investigation that is clearly within the EEOC's authority. The information sought is relevant and within the EEOC's investigatory powers under the ADA, GINA, ADEA, and Title VII for the above-referenced Charge of Discrimination. For these reasons and the reasons set forth above, the EEOC respectfully requests:

22

1.    That an Order to Show Cause be issued directing Respondent to appear before this Court and show cause why an Order should not be issued directing it to comply with the subpoena;

2.    That upon Respondent's response to the Order to Show Cause, an order be issued directing Respondent to comply with the subpoena;

3.    That the EEOC be awarded its costs in bringing this action; and

4.    That the EEOC be granted such further relief as may be necessary and appropriate.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

*/s/ Robert K. Dawkins*
ROBERT K. DAWKINS
Regional Attorney
Georgia Bar No. 076206

*/s/ Sairalina Corniel*
SAIRALINA CORNIEL
Trial Attorney
Georgia Bar No. 940665
sairalina.corniel@eeoc.gov

DATED:  August 8, 2013